UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CHANTELL MEZQUIA,

   Plaintiff

v.

RANDSTAD US, LLC, and BOSCH
SECURITY SYSTEMS, INC.,

   Defendants.
_____/

CASE NO.:

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

## COMPLAINT

Plaintiff, Chantell Mezquia, by and through her counsel, Derek Smith Law Group, PLLC, hereby complains of the Defendants, Randstad US, LLC, and Bosch Security Systems, Inc., and alleges as follows:

### NATURE OF CASE

1. This is an action for damages and other relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, as amended ("Title VII"); and the Florida Civil Rights Act of 1992, Section 760.10 *et seq.* ("FCRA"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against. Specifically, Plaintiff has suffered sex/gender discrimination, a hostile work environment and been both sexually harassed and retaliated against by her employer for opposing the ongoing sexual behavior.

### JURISDICTION AND VENUE

2. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to Title VII of the Civil Rights Act of 1964 and FCRA.

3. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII of the Civil Rights Act of 1964 and FCRA.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendants were located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district. Plaintiff was employed by Defendant within Florida in Broward County.

5. On or about February 25, 2019, Plaintiff dual-filed charges with the EEOC and FCHR against Defendants as set forth herein.

6. On or about September 30, 2019, the EEOC issued Plaintiff a Right to Sue Letter.

7. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

## PARTIES

8. At all material times, Plaintiff CHANTELL MEZQUIA (hereinafter referred to as "Plaintiff" or "MEZQUIA") is an individual female who is a resident of the State of Florida and resides the Broward County.

9. Defendant RANDSTAD US, LLC (hereinafter referred to as "RANDSTAD") was and still is, a Foreign Limited Liability Company incorporated in Delaware and licensed to do business in the State of Florida.

10. Defendant BOSCH SECURITY SYSTEMS, INC. (hereinafter referred to as "BOSCH") was, and still is, a Foreign Profit Corporation incorporated in Delaware and licensed to do business in the State of Florida.

11. At all times material, Defendant RANDSTAD and Defendant BOSCH (collectively herein referred to as "Company") were Plaintiff's joint and/or sole employer.

12. At all material times, JARVIS FREEMAN (hereinafter "FREEMAN") was Plaintiff's direct supervisor, controlling all tangible aspects of Plaintiff's job duties, and held the power to hire and fire Plaintiff.

13. At all material times, GERANNE GREEN (hereinafter "GREEN") also served in a supervisory capacity to Plaintiff as her floor manager. GREEN also controlled all tangible aspects of Plaintiff's job duties and held the power to hire and fire Plaintiff.

14. Defendant Company is an employer as defined by all laws under which this action is brought and employs the requisite number of employees.

## STATEMENT OF FACTS

15. On or around December 5, 2017, Defendant Company hired Plaintiff as the "Porsche Connect Support Specialist".

16. On or about December 2017, during Plaintiff's second week of training, the sexual harassment began with comments from FREEMAN.

17. In January 2018, Plaintiff alerted BARBARA LYNN HESSLEY (hereinafter "HESSLEY") from RANDSTAD's Human Resources Department of FREEMAN's inappropriate conduct to no avail. In sum and substance, HESSLEY told Plaintiff that she did not believe Plaintiff because FREEMAN is "a married man with children" who "would not do anything of that sort to jeopardize his family nor position". HESSLEY terminated the conversation at that point.

18. Following her unsuccessful attempt to seek reprieve from the Human Resources Department, the comments from FREEMAN continued over the next seven months. Plaintiff would pass FREEMAN and say something as innocuous as "hello" to which FREEMAN would respond

3

with comments pertaining to how Plaintiff looks or what she was wearing. FREEMAN told Plaintiff how attractive he believed her to be and specifically commented on how good her buttocks appeared.

19. On or about late March into early April 2018, FREEMAN and Plaintiff were in the break room together setting up for a client breakfast for the Porsche and BMW clients when FREEMAN walked up right next to Plaintiff and told her how good her lips looked and that he wanted to kiss her. In a state of disbelief, Plaintiff asked FREEMAN to repeat himself to which FREEMAN said, in sum and substance, "if we weren't in the workplace, I would try to kiss your juicy lips". Plaintiff immediately returned to her desk.

20. Due to the continuous and ongoing inappropriate comments of a sexual nature, Plaintiff began to distance herself while remaining respectful and professional towards FREEMAN as he was one of her supervisors.

21. During her employment, GREEN also made inappropriate comments to Plaintiff. GREEN expressed his belief that both Plaintiff's physical appearance as well as her personality were attractive. As Plaintiff arrived to work, GREEN would tell her how good she looked and he would look at Plaintiff's buttocks and smile.

22. On or about April 2018, GREEN told Plaintiff that he had a very vivid sexual dream about Plaintiff. GREEN followed by stating how he was surprised he didn't wake his wife up because of how much movement he was making in bed.

23. Throughout her seven months of employment, both GREEN and FREEMAN made inappropriate sexual comments of an ongoing, continuous and persistent nature.

24. After Plaintiff attempted to schedule a sit-down meeting with HESSLEY from the Human Resources Department, GREEN requested to have Plaintiff's contract with the company

terminated. Her contract was subsequently wrongfully and unlawfully terminated on June 25, 2018, in retaliation for her attempts to change the hostile nature of the environment by reporting the inappropriate sexual comments and actions made by both GREEN and FREEMAN.

25. Defendant companies failed to give Plaintiff an opportunity to discuss her concerns despite Plaintiff's requests and insistence that she had a very important matter to discuss. Once terminated, Plaintiff was told that there would not be a meeting and that what she has to say does not matter because what is going on within the account is no longer her business. Plaintiff persisted and attempted to procure an e-mail address so she could advise of the harassment she dealt with in writing. Instead of providing any contact information, Plaintiff was instructed to leave the building.

26. At all material times, Plaintiff claims a continuous practice of sexual harassment and hostile work environment.

27. The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

28. Defendants exhibited a pattern and practice of not only discrimination but also retaliation.

29. At all times material, Defendants' supervisors/management acted with deliberate indifference to the sexual harassment and hostile work environment; and retaliation thereof.

30. As a result of Defendants' continued harassment of Plaintiff, she suffered numerous injuries including physical, economic, and emotional damages.

31. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

32. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

33. As Defendants' conduct has been malicious, reckless, willful, outrageous, and conducted with full knowledge of the law, Plaintiff will demand punitive damages against Defendants.

**AS A FIRST CAUSE OF ACTION FOR**
**DISCRIMINATION UNDER TITLE VII**

34. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in the above numerated paragraphs.

35. Over the course of seven months, and on numerous occasions, GREEN and FREEMAN made inappropriate sexual comments to Plaintiff.

36. Shortly after Plaintiff began her employment with Defendants, FREEMAN started commenting on her appearance and clothing. FREEMAN would also make comments about Plaintiff's buttocks and inform her that he wanted to kiss Plaintiff. Specifically, FREEMAN told Plaintiff "if we weren't in the workplace, I would try to kiss your juicy lips."

37. GREEN also made inappropriate and harassing comments to Plaintiff. GREEN told Plaintiff of a "very vivid sexual dream" he had about Plaintiff and advised her that he is surprised he did not wake his wife up because he was moving around so much. GREEN also told Plaintiff that she reminded him of his wife and thinks she is extremely attractive.

38. Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*:

    "(a) Employer practices It shall be an unlawful employment practice for an employer –
    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges

of employment, because of such individual's race, color, religion, sex, or national origin."

39. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against and sexually harassing Plaintiff because of her gender/sex.

40. The sexually harassing and discriminatory conduct directed at Plaintiff was sufficiently severe and pervasive so as to unreasonably interfere with Plaintiff's physical and/or psychological health, work performance and to create and intimidating, hostile and offensive working environment.

41. As a direct and proximate result of Defendants' intentional discriminatory conduct in violation of the Title VII, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

42. Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

43. Conduct of Defendants and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

44. Plaintiff has been damaged by the illegal conduct of Defendant.

### AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII

45. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in the above numerated paragraphs.

46. When Plaintiff first attempted to contact Human Resources about the sexual harassment she was being subjected to, she was not believed because FREEMAN is "a married man with children and he would not do anything of that sort to jeopardize his family nor position." The discussion pivoted from talks about the harassment to other topics at that point.

47. On or around June 2018, Plaintiff tried again to contact Human Resources but this time she contacted both the Manager and the Assistant Manger to request a sit-down meeting. That meeting never occurred.

48. On or around June 25, 2018, without notice, Defendants wrongfully and unlawfully terminated Plaintiff. Defendants terminated Plaintiff because of her objection to and attempts to report Defendants' unlawful behaviors.

49. Upon her termination, Plaintiff requested contact information to report this unlawful behavior, but that request was denied and she was instead asked to leave the building.

50. At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations by Defendants' employees of Title VII had occurred.

51. At all times material, Defendants allowed the sexually harassing and discriminatory practices to continue in the work environment.

52. At all times relevant, the unlawful discrimination by Defendants' employees against Plaintiff in the terms and conditions of her employment because she opposed a practice made unlawful by Title VII which would not have occurred but for that opposition.

53. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. $2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> "(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

54. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. $2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

55. At all times relevant, Defendant's employees acted intentionally and with reckless disregard of Plaintiff's rights protected by Title VII.

56. At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant.

57. As a direct and proximate result of Defendants' intentional retaliatory conduct in violation of the Title VII, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

58. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

59. Conduct of Defendants and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

60. Plaintiff has been damaged by the illegal conduct of Defendants.

**AS A THIRD CAUSE OF ACTION FOR**
**<u>DISCRIMINATION UNDER STATE LAW</u>**

61. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in the above numerated paragraphs.

62. As a result of her gender/sex, Defendants subjected and permitted it's employees to expose Plaintiff to discrimination and unlawful discharge.

63. The FCRA prohibits Defendant Company from discriminating against Plaintiff because of her gender/sex with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

64. On a daily and consistent basis throughout the course of her employment, Plaintiff's supervisors made unwelcomed sexual advanced and comments to Plaintiff.

65. Defendants violated the FCRA by discriminating against Plaintiff and subjecting Plaintiff to an unlawful sexually harassing environment based her gender/sex, of which the Defendants were fully aware of.

66. The sexually harassing and discriminatory directed at Plaintiff was sufficiently severe and pervasive so as to unreasonably interfere with Plaintiff's physical and/or psychological health, work performance and to create and intimidating, hostile and offensive working environment.

67. As a direct and proximate result of Defendants' intentional discriminatory conduct in violation of the FCRA, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

68. Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

69. Conduct of Defendants and/or their agents deprived Plaintiff of her statutory rights guaranteed under state law.

70. Plaintiff has been damaged by the illegal conduct of Defendants.

**AS A FOURTH CAUSE OF ACTION FOR**
**<u>RETALIATION UNDER STATE LAW</u>**

71. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in the above numerated paragraphs.

72. On or around June 25, 2018, without notice, Defendants wrongfully and unlawfully terminated Plaintiff. Defendants terminated Plaintiff because of her objection to the sexual comments and advances made by her supervisors and in retaliation for her objections to that unlawful behavior.

73. At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations by Defendants' employees of FCRA had occurred.

74. At all times material, Defendants allowed the sexually harassing and discriminatory practices to continue in the work environment.

75. At all times relevant, the unlawful discrimination by Defendants' employees against Plaintiff in the terms and conditions of her employment because she opposed a practice made unlawful by FCRA which would not have occurred but for that opposition.

76. Defendants engaged in unlawful employment practice prohibited by the FCRA by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

77. At all times relevant, Defendants' employees acted intentionally and with reckless disregard of Plaintiff's rights protected by FCRA.

78. At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with Defendants.

79. As a direct and proximate result of Defendants' intentional retaliatory conduct in violation of the FCRA, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

80. Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

81. Conduct of Defendants and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

82. Plaintiff has been damaged by the illegal conduct of Defendants.

## DEMAND FOR JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and economic damages, punitive damages, liquidated damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Miami, Florida
       December 23, 2019

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*

Caroline H. Miller, Esq.
701 Brickell Avenue, Suite 1310
Miami, FL 33131
Tel: (305) 946-1884